**Entered on Docket**
**August 28, 2006**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed: August 25, 2006**

**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                No. 03-44829
                                     Chapter 7
RALBERT BROOKS-HAMILTON,

        Debtor
_____/

RALBERT BROOKS-HAMILTON          A.P. No. 05-4345 AT

        Plaintiff,

    vs.

CITY OF OAKLAND, et al.

        Defendants.
_____/

TEVIS THOMPSON, JR.

        Cross-Plaintiff,

    vs.

RALBERT BROOKS-HAMILTON,
et al.

        Cross-Defendants
_____/

**MEMORANDUM OF DECISION**

The motion of defendant/cross-complainant Tevis Thompson, Jr. (the "Trustee"), seeking summary judgment on the claims asserted against him in the complaint filed in the above-captioned adversary proceeding and on his cross-claims against the plaintiff/cross-defendant Ralbert Brooks-Hamilton (the "Debtor") and others came on for hearing before the above-captioned Court on July 20, 2006. At the conclusion of the hearing, the Court took the motions under submission. The Court's decision and the basis for that decision are set forth below.

**BACKGROUND**

The Court takes judicial notice of the following background facts which are a matter of public record or have been finally determined in this case or in related proceedings in the bankruptcy court:

The Debtor was a participant in a government program entitled the Enhanced Enterprise Community Flagship Project Loan Program (the "EEC Program"). Pursuant to this program, between 1996 and 1998, the Debtor borrowed $500,000 from the City of Oakland ("Oakland") and the Bank of Oakland (the "Bank") to develop a business located in an area of Oakland, California designated by the EEC Program as an "enterprise zone."

With the proceeds of these loans, the Debtor purchased real property located at 880 27th Street in Oakland, California (the "Warehouse"). On March 4, 1996, the Bank recorded a deed of trust

2

against the Warehouse to secure repayment of the loans.  Oakland recorded deeds of trust for the same purpose on July 1, 1997 and July 21, 1998.

The Debtor failed to repay the loans.  After a period of forbearance, Oakland and/or the Bank commenced foreclosure proceedings against the Warehouse.  The Debtor attempted to stop the foreclosure proceedings by various means, including by filing the above-captioned bankruptcy case on August 21, 2003.[1]  The case was initially filed as a chapter 13 case but was converted to chapter 7 on May 12, 2004.[2]  The Trustee was appointed as the chapter 7 trustee.

On June 10, 2005, the Trustee filed a motion to approve the sale of the Warehouse free and clear of liens (the "Sale Motion") through a negotiated sale subject to overbidding.  The Debtor opposed the sale on various grounds.  His written opposition did

---

[1]When a bankruptcy petition is filed, an automatic stay goes into effect.  The automatic stay renders void any act to collect a pre-petition debt from the debtor or to exercise any control over property of the bankruptcy estate.  See 11 U.S.C. § 362(a).  With limited exceptions, not relevant here, the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case."  See 11 U.S.C. § 541(a)(1).

[2]Chapter 13 of the Bankruptcy Code permits the debtor to retain possession of his property and to propose a plan for repayment of his debts.  See 11 U.S.C. §§ 1321, 1322.  Chapter 7 requires the debtor to turn over all nonexempt property to the chapter 7 trustee who is required to liquidate the property and distribute the proceeds to creditors.  See 11 U.S.C. § 704.

3

not include the contention that he did not own the Warehouse.[3] However, at the hearing, he made the oral assertion that the Warehouse was not property of the estate and therefore could not be sold because he had transferred it to an irrevocable trust for the benefit of his children before filing the bankruptcy case.

The Court overruled the Debtor's objections, including this belatedly asserted oral objection. At a hearing conducted on July 7, 2005, the Court approved the sale of the Warehouse free and clear of certain specified liens and interests, including the claimed interest of the trust. An order approving the sale was entered on July 22, 2005.[4]

After the order was entered, the Trustee discovered that, post-petition, the Debtor had recorded two grant deeds purporting to transfer title to the Warehouse and had also recorded a lis pendens (the "Lis Pendens"). An amended order was entered on August 8, 2005, providing that the sale was also free and clear of any liens and interests created by the recordation of these documents.

In the mean time, the Debtor filed two actions related to the Warehouse in state court:

---

[3]In his bankruptcy schedules, the Debtor had listed a fee simple interest in the Warehouse.

[4]The Warehouse was sold at auction to Ken Sherman and San Manh (the "Buyers") for $590,000.

4

On June 13, 2005, the Debtor filed an action in state court, seeking to enjoin the sale and naming Oakland, Oakland's attorney, Chris Kuhner ("Kuhner"), the Trustee, and the Trustee's real estate agent, Michael Natarro ("Natarro") as defendants. The action (the "Injunction Proceeding") was removed to this court by the Trustee on July 12, 2005 and was designated A.P. No. 05-4314. On October 3, 2005, the Court issued an order dismissing Oakland and Kuhner from the proceeding. On July 20, 2006, the Court issued an order granting the Trustee's and Natarro's motion for summary judgment, dismissing all remaining claims.

On July 12, 2005, the Debtor filed a second action in state court. In this action, the Debtor sought to quiet title to the Warehouse, naming Oakland and the Trustee as defendants.[5] The Debtor filed an amended complaint (the "Complaint") on July 18, 2005. This action (the "Quiet Title Proceeding") was removed to the bankruptcy court on August 8, 2005 by Oakland and was designated A.P. No. 05-4345: i.e., the above-captioned adversary proceeding. On October 3, 2005, the Court issued an order dismissing Oakland from this proceeding as well.

The Trustee filed an answer to the Complaint and a cross-complaint against the Debtor and various other individuals and

_____

[5]On July 18, 2005, the Debtor amended the complaint to add the Buyers and Yan Guang Qui ("Qui") as defendants. However, on December 15, 2005, he voluntarily dismissed Qui who was an unsuccessful bidder for the Warehouse. It does not appear that the Debtor has ever served the Buyers with a copy of the Complaint.

5

entities.  An amended cross-complaint (the "Cross-Complaint") was filed on August 18, 2005.  The cross-defendants (the "Cross-Defendants") all filed answers to the Cross-Complaint.

On June 23, 2006, the Trustee filed a motion for judgment on the pleadings and/or to dismiss the claims asserted in the Complaint and for summary judgment on some of the claims asserted in the Cross-Complaint.  The Debtor filed an opposition to the motion.  The Cross-Defendants other than the Debtor (the "Nondebtor Cross-Defendants") filed a separate opposition.  The motion came on for hearing on July 20, 2006 and at the conclusion of the hearing was taken under submission.

**APPLICABLE LAW**

A motion to dismiss for failure to state claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter "FRCP")", made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (hereinafter "FRBP"), may be granted if the allegations of the claim, even if true, do not provide a basis for judgment in the nonmoving party's favor.  In making this determination, all reasonable inferences must be drawn from the allegations in favor of the nonmoving party.  Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1220 (9th Cir. 1995).

A motion for judgment on the pleadings under FRCP 12(c), made applicable to this proceeding by FRBP 7012(b), may be granted when the pleadings show there are no issues of material fact.  Fed. R. Civ. Proc. 12(c); Gen. Conf. Corp. of Seventh-Day Adventists v.

Case: 05-04345   Doc# 36   Filed: 08/25/06   Entered: 08/28/06 15:37:51   Page 6 of 27

<u>Seventh-Day Adventist Congregational Church</u>, 887 F.2d 228, 230 (9th

Cir. 1989), <u>cert.</u> <u>denied</u>, 493 U.S. 1079 (1990). "All allegations

of fact by the party opposing the motion are accepted as true, and

are construed in the light most favorable to that party." <u>Id.</u>

Where, on a motion for judgment on the pleadings, matters outside

the pleadings are presented, the motion shall be treated as one for

summary judgment under FRCP 56. Fed. R. Civ. Proc. 12(c).

A motion for summary judgment under FRCP 56 (made applicable

herein by FRBP 7056) may be granted if the pleadings, declarations,

and other discovery on file show that no genuine issue exists as to

any material fact. Fed. R. Civ. Proc. 56(c); <u>see</u> <u>In re Rogstad</u>,

126 F.3d 1224, 1227 (9th Cir. 1997). A court reviewing a summary

judgment motion must view the evidence in the light most favorable

to the nonmoving party. <u>See</u> <u>Triton Energy Corp.</u>, 68 F.3d at 1220.

**DISCUSSION**

The Complaint asserts two claims for relief: (1) for quiet

title and (2) for equitable estoppel. The Cross-Complaint asserts

six claims for relief: (1) to avoid post-petition transfers under

11 U.S.C. § 549, (2) to avoid unperfected liens or transfers under

11 U.S.C. § 544, (3) to avoid fraudulent transfers under Cal. Civ.

Code § 3439.04, (4) to avoid fraudulent transfers under Cal. Civ.

Code § 3439.05, (5) for declaratory relief, and (6) to declare the

post-petition recordation of a lis pendens against the Warehouse as

a violation of the automatic stay pursuant to 11 U.S.C. § 362 and

therefore void.

The principal issue raised by these pleadings is set forth in both the first claim for relief in the Complaint and the fifth claim for relief in the Cross-Complaint: i.e., whether the Debtor effectively transferred his interest in the Warehouse to an irrevocable trust prior to filing for bankruptcy so that the Warehouse was not property of his bankruptcy estate and could not effectively be sold by the Trustee. The Court addresses this issue in section A below. The Court addresses the second claim for relief in the Complaint and the first, second, fourth, and sixth claims for relief in the Cross-Complaint in section B below.[6]

**A. WAS WAREHOUSE PROPERTY OF DEBTOR'S BANKRUPTCY ESTATE?**

In the Complaint, the Debtor identifies himself as the settlor of the B.H. & Associates Unincorporated Business Organization Family Holding Trust (the "B.H. & Associates Trust"). He alleges that the Trustee claims an interest adverse to him and the beneficiaries of the B.H. & Associates Trust. He seeks judgment quieting title to the Warehouse in favor of the B.H. & Associates Trust.

In support of these allegations, the Debtor attaches a series of exhibits. Exhibit A consists of two grant deeds, purporting to transfer title to the Warehouse to the B.H. & Associates Trust. The first grant deed bears a signature date for the Debtor of August 23, 1999 (the "August 23 Grant Deed"). The second grant

---

[6]The Trustee's motion for summary judgment did not address the third claim for relief in the Cross-Complaint.

8

deed bears two signature dates for the debtor: i.e., August 20, 1999 and July 8, 2005 (the "August 20 Grant Deed").[7]  Both grant deeds (collectively the "Grant Deeds") were recorded after the Debtor filed his bankruptcy petition.[8]

Exhibits B and C appear to be copies of the same document. The document is entitled Declaration of Trust.  In it, the Debtor declares that, on the date of his death, he will hold the Warehouse in trust for the use and benefit of his children.  The first page of the document identifies the document as an Amendment to a recorded document numbered #99323112.[9]  Both Exhibit B and C bear a

---

[7]The name of the trust on August 20 Grant Deed does not include the phrase "& Associates."  However, the Court assumes that this was a scrivener's error.  There is no evidence that there was more than one trust created by the Debtor.

[8]The integrity of these documents is highly suspect.  First, it is questionable whether the Debtor actually signed these two grant deeds in 1999.  The Debtor's signature on August 23 Grant Deed was not notarized until September 14, 2004, the day before the August 23 Grant Deed was recorded.  The Debtor's signature on the August 20 Grant Deed appears to have been notarized on July 8, 2005, the same day it was recorded. However, the notary provision is crossed out.  Second, the first page of the August 23 Grant Deed, which purports to be a two page document, states that it is page 1 of 1.  The second page of both grant deeds appears to be a copy of the same document, a legal description, which is identified as page 4 of 5.  However, the Court will assume for purposes of this decision that the Grant Deeds were signed on August 20 and 23, 1999 respectively.

[9]A copy of this document (the "Exhibit D Declaration of Trust") is attached as Exhibit D to the Declaration of Miriam Khatiblou in support of the Trustee's motion for summary judgment (the "Khatiblou Declaration").  This document is also entitled Declaration of Trust and is the same form of document as Exhibits B and C to the Complaint.  The Debtor's signature on the Exhibit D Declaration of Trust is dated August 5, 1999.

9

recordation date of March 21, 2000 and the same recordation number: #2000082861.

Exhibit C bears a March 21, 2000 date for the Debtor's signature and attaches a notary form notarizing the Debtor's signature on the same date. Paragraph 5 of the Exhibit C Declaration of Trust contains the following language:

> 5. I reserve unto myself the power and right at any time during my lifetime to amend or revoke in whole or in part the trust hereby created without the necessity of obtaining the consent of the beneficiary and without giving notice to the beneficiary. The sale or other disposition by me of the whole or any part of the property held hereunder shall constitute as to such whole or part a revocation of this trust.

The B.H. & Associates Trust is named as the successor trustee, to serve as trustee in the event of the Debtor's incapacity.

In the Exhibit B Declaration of Trust, paragraph 5 is interlineated. In addition, the Debtor's signature appears to bear a date of August 20, 1999. By scrutinizing the document, however, one can see that this date was written over a March 21, 2000

---

However, his signature was not notarized until August 23, 1999. According to a preliminary title report attached as Exhibit B to the Khatiblou Declaration, the Exhibit D Declaration of Trust was recorded on August 23, 1999. The principal difference between the Exhibit D Declaration of Trust and Exhibit B and C Declarations of Trust is that, in the former, the Debtor declares that he holds the Warehouse for the use and benefit, upon his death, of Ralbert Brooks Hamilton. Thus, the need for the amendment.

10

date.[10]  Again, for purposes of this decision, the Court will assume that Exhibit B was interlineated before it was signed or recorded and was actually signed by the Debtor on August 20, 1999.

The Trustee seeks summary judgment in his favor on the Debtor's first claim for relief which presents the same issue as his fifth claim for relief in the Cross-Complaint, for declaratory relief.  He contends that none of the documents attached to the Complaint were sufficient to prevent the Warehouse from becoming property of the bankruptcy estate when the Debtor filed his bankruptcy petition.  The Court agrees.

The Court will assume for purposes of this decision that the Grant Deeds were executed prior to the Debtor's bankruptcy case and effectively transferred the Warehouse to a trust.  The question remains whether the effect of this transfer prevented the Warehouse from becoming property of the Debtor's bankruptcy estate when he filed his bankruptcy petition.  This depends on the terms of the trust.  Neither of the two Declarations of Trust attached to the Complaint contain terms permitting such a construction.

The Exhibit C Declaration of Trust, in which paragraph 5 was not interlineated, expressly stated that the Debtor could revoke the trust.  Under California law, when the settlor of a trust

_____

[10]Again, both Exhibits B and C appear to be incomplete documents.  Exhibit B contains only four pages.  However, the bottom of each page indicates that the complete document contains six pages.  Exhibit C consists of five pages.  The last page of this document is a notary form which indicates that the complete document consists of seven pages.

11

retains the power to revoke a trust, the trust res remains the settlor's property subject to his creditor's claims.  See Cal. Prob. Code § 15800; § 18200 (property in revocable trust is subject to claims of settlor's creditors during settlor's lifetime); Empire Props. v. County of Los Angeles, 44 Cal. App. 4th 781, 786-87 (1996)(transfer of real property to revocable trust does not change ownership for property tax reassessment purposes).  See also In re Irwin, 338 B.R. 839, 854-53 (E.D. Cal. 2006)(property transferred to revocable trust was property of the settlor's bankruptcy estate); In re Schmitt, 215 B.R. 417, 422, n.1 (Bankr. 9th Cir. 1997)(under Oregon law, interest of beneficiary of revocable trust did not become property of beneficiary's bankruptcy estate). Although paragraph 5 was interlineated on the Exhibit B Declaration of Trust, the Exhibit B Declaration of Trust did not expressly state that the trust was irrevocable.  Under California law, a trust is revocable unless it is expressly stated to be irrevocable. See Cal. Prob. Code § 15400.

However, in his opposition to the Trustee's motion for summary judgment, the Debtor produced a new trust document which is entitled "Irrevocable Pure Trust Agreement August Twentieth Ninteen [sic] Hundred and Ninty [sic] Nine The Brooks-Hamilton Unincorporated Family, Business, Pure Trust Organization-Holding Trust Formation, Establishment and Adoption of" (the "Irrevocable

12

Trust Agreement").[11]  The Irrevocable Trust Agreement purports to have been executed by the Debtor and his three brothers on August 20, 1999.[12]  It provides that the brothers agree to permanently and irrevocably establish an family trust to hold all of the family's assets for the benefit of the Brooks-Hamilton family's children (the "Irrevocable Trust").

The Irrevocable Trust is to be managed by the four brothers, as trustees, with the Debtor acting as Chairperson.  The Irrevocable Trust Agreement names B.H. & Associates Trust as the successor trustee in case the settlor should become incapacitated during his lifetime before the beneficiaries reach the age of twenty-one.  (See paras. 4 & 7.).  Paragraph 5 provides that the trust assets may not be voluntarily or involuntarily assigned. Para. 6 provides as follows:

> 6.  The settlor reserves unto himself the power and right during his lifetime to: (1) place a mortgage or other liens upon the property (2) to collect any rental or other income which may

---

[11]He also attaches a document entitled "Fictitious Long Form Deed of Trust and Assignment of Rents" (the "Fictitious Deed of Trust"). The Fictitious Deed of Trust appears to be a copy of a generic deed of trust document recorded in Alameda County, California in 1961 by Title Insurance and Trust Co. It contains no reference to the Debtor, to any trust, or to the Warehouse.  Its only relevance to this proceeding is that paragraph 8 of the Irrevocable Trust Agreement purports to adopt provisions 1 through 14 of the Fictitious Deed of Trust into the Amended Deed of Trust.  No coherent argument is made as to how this document adds any substance to the Debtor's claim.

[12]The signatures are not notarized, and it does not appear that the Irrevocable Trust Agreement was ever recorded.

13

accrue from the trust property and to pay such income to himself as an individual. He shall be exclusively entitled to all such income accruing from the trust properties/assets during his lifetime and no beneficiary named therein shall have any claims upon such income and or profits distributed to him.

In the opposition filed by the Nondebtor Cross-Defendants, the Nondebtor Cross-Defendants note that, a deed of trust (the "Deed of Trust") and an amended deed of trust (the "Amended Deed of Trust") were recorded on August 23, 1999 and March 21, 2000, respectively, with respect to the Warehouse (collectively the "Deeds of Trust").[13] They note that the Deeds of Trust contain the word "grant." They contend that the use of the word "grant" is all that is required to transfer title to real property, citing Cal. Civ. Code § 1092.

The Nondebtor Cross-Defendants also note that Deeds of Trust refer to an agreement executed in August 1999. They apparently reason that, even if the Deeds of Trust were insufficient to transfer title to real property by themselves, they incorporated the Irrevocable Trust Agreement into the Deeds of Trust. As a result, the combined documents not only transferred title to the Warehouse, when the Deeds of Trust were recorded, the transfer became perfected.

The Trustee responds that, at best, the Deeds of Trust transferred a security interest in the Warehouse. They did not

---

[13]Copies of the Deeds of Trust are attached to the Khatiblou Declaration as Exhibits F and G, respectively.

14

transfer title.  He notes that, under California law, a deed of trust is comparable to a mortgage.  A mortgage does not transfer title to real property.  It merely imposes a lien upon it.  In support of this contention, he cites <u>Monterey S.P. Partnership v. W.L. Bangham, Inc.</u>, 49 Cal. 3d 454, 460 (1989); <u>Bank of Italy Nat. Trust & Sav. Ass'n v. Bentley</u>, 217 Cal. 644, 656-57 (1933).  Moreover, the Trustee notes that the Deeds of Trust state that the grant is for purposes of securing an obligation.  They do not purport to transfer title to the Warehouse.

The Court agrees that the Deeds of Trust were insufficient to transfer title to the Warehouse to the Irrevocable Trust.[14]  It is true that, as the Nondebtor Cross-Defendants note, Cal. Civ. Code § 1092 uses the word "grant" in the language proscribed for transferring title to real property.  However, that word may not be read in isolation.  The critical phrase stated in § 1092, taken as a whole, is a "grant...[of] all that real property situated in," the property description to be provided.

By contrast, the Deeds of Trust grant an interest in the Warehouse "with power of sale...to secure performance of a certain obligation...."  Cal. Civ. Code § 2872 provides that a transfer of an interest in real property to secure performance of an act creates a lien on the real property in question.  Section 2888

_____

[14]The Court will assume for the purposes of this decision that the Debtor, with his three brothers, actually signed the Irrevocable Trust Agreement in 1999.

15

provides that a lien transfers no title to the property subject to the lien. Moreover, the reference in the Deeds of Trust to the agreement executed in 1999 did not purport to incorporate the terms of the agreement into the Deed of Trust. The reference indicates that the Deeds of Trust is to secure obligations under the referenced agreement.

Thus, the only document capable of transferring title to the the Warehouse was the Irrevocable Trust Agreement. Unlike the Exhibit B and C Declarations of Trust, as indicated by its title, the Irrevocable Trust Agreement is irrevocable. Therefore, the authorities cited above, holding that property transferred to a revocable trust does not change the beneficial ownership of the property, are inapplicable.

As noted above, the Irrevocable Trust Agreement contains an anti-alienation provision. Pursuant to 11 U.S.C. § 541(c)(2), such provisions are enforceable in a bankruptcy case to the same extent that they are enforceable under applicable nonbankruptcy law, in this case, California law. However, under California law, when the settlor is a beneficiary of the trust, any spendthrift provisions are invalid. See Cal. Prob. Code § 15304(a); In re Schneider's Estate, 140 Cal. App. 2d 710, 171 (1956). Where the trust agreement provides that the trustee has the discretion to pay the income or principal (or both) to the settlor/beneficiary, the settlor's beneficial interest in the trust is the maximum amount that could be paid. See Cal. Prob. Code § 15304(b).

16

Although the Debtor is not a named beneficiary under the Irrevocable Trust Agreement, the bulk of the beneficial interest in the Warehouse belonged to him when he filed his bankruptcy petition. As noted above, paragraph 6 of the Irrevocable Trust Agreement permitted the Debtor to encumber the Warehouse up to its full value, leaving his children with an interest of little value. This beneficial interest in the Warehouse became property of the Debtor's bankruptcy estate, capable of being transferred by the Trustee. See In re Barnes, 275 B.R. 889, 895 (Bankr. E.D. Call. 2002); see also In re Neutron, 922 F.2d 1379, 1383 (9th Cir. 1990 (beneficial interest in trust not protected by spendthrift provision is property of bankruptcy estate).

Nevertheless, assuming the Irrevocable Trust Agreement was executed prior to the Debtor's bankruptcy filing, it did effectively transfer an interest in the Warehouse to the Debtor's children, albeit an interest of little value. Thus, the Trustee is only entitled to partial summary judgment on the first claim for relief in the Complaint and the fifth claim for relief in the Cross-Complaint.

**B. OTHER CLAIMS ASSERTED IN COMPLAINT AND CROSS-COMPLAINT**

**1. Second Claim for Relief in Complaint--Equitable Estoppel**

In the second claim for relief in the Complaint, the Debtor recites his version of the history of his loan from Oakland, alleging that Oakland acted wrongfully to his detriment. On that basis, he seeks to estop the Trustee from acquiring any interest in

17

the Warehouse.  The Trustee asserts that the second claim for relief--for equitable estoppel--should be dismissed pursuant to FRCP 12(b)(6).  He notes that the allegations of wrongdoing are all directed to the Bank's conduct.  No basis for estopping the Trustee is alleged.

The elements of a claim for equitable estoppel are that:

> (1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct.

U.S. v. Hemmen, 51 F.3d 883, 892 (9th Cir. 1995).  The allegations fail to satisfy any of the elements of this claim against the Trustee.  Therefore, the Trustee is entitled to have this claim dismissed.

### 2.  First Claim for Relief in Cross-Complaint--Avoidance of Grant Deeds and Lis Pendens

In the first claim for relief in the Cross-Complaint, the Trustee seeks to avoid the liens created by recordation of the Grant Deeds and Lis Pendens under 11 U.S.C. § 549.[15]  Section 549 provides that a trustee may avoid a post-petition transfer of property of the estate that is not authorized by either the

---

[15]The Trustee also seeks to recover the avoided transfers for the benefit of the estate pursuant to 11 U.S.C. § 550.  A transfer avoided under 11 U.S.C. § 549 may be recovered under 11 U.S.C. § 550.  However, when the avoided transfer is a lien on real property, this additional remedy is unnecessary.  The value of the real property freed up by the avoidance of the lien is automatically preserved pursuant to 11 U.S.C. § 551.

18

Bankruptcy Code or the bankruptcy court. This motion will be granted with respect to the Grant Deeds and denied with respect to the Lis Pendens.

The Nondebtor Cross-Defendants do not oppose avoidance of any liens created by recordation of these documents. The Debtor's opposition asserts only that he acted innocently, without fraudulent intent. He contends that he recorded the Grant Deeds on the recommendation of the Alameda County Recorder's Office. He states that he was not aware that recording the Lis Pendens was improper.

The recordation of the Grant Deeds may clearly be avoided under 11 U.S.C. § 549. As discussed above, the Court has concluded that, for the most part, the beneficial interest in the Warehouse was property of the Debtor's bankruptcy estate. The recordation of the Grant Deeds constituted a transfer of this beneficial interest although the transfer was insufficient to prevent the Warehouse from becoming property of the Debtor's bankruptcy estate.[16] The Debtor's bankruptcy case was commenced on August 21, 2003. The

---

[16]A transfer of an interest in real property occurs when a deed is executed and delivered to the buyer, regardless of whether it is recorded. In re Roosevelt, 87 F.3d 311, 316-18 (9th Cir. 1996); Obranovich v. Stiller, 220 Cal. App. 2d 205, 207-08 (1963). However, this transfer is only effective between parties to the transaction and other with notice of it. Cal. Civ. Code. § 1217; In re Weisman, 5 F.3d 417, 420 (9th Cir. 1993). A second transfer occurs when the deed is recorded. This transfer gives constructive notice to the world of the transfer effected earlier pursuant to the deed. Cal. Civ. Code § 1213; In re Guilino, 779 F.2d 546, 551, n.3 (9th Cir. 1985).

19

Debtor recorded the Grant Deeds on September 14, 2004 and July 8, 2005. Thus, the recordation occurred post-petition. The Debtor was not authorized to record these documents by either the Bankruptcy Code or the bankruptcy court.

The Debtor's alleged lack fraudulent intent is irrelevant to this claim. "The intent of the parties effecting the transfer is irrelevant under § 549. Likewise, fraud is not an element for a cause of action by the Trustee under § 549." In re Dreiling, 233 B.R. 848, 876 (Bankr. D. Col. 1999) (citing In re Kingsley, 208 B.R. 918 (8th Cir. 1997) and In re Dartco, Inc., 197 B.R. 860 (Bankr. D. Minn. 1996)). As a result, the Trustee's motion for summary judgment will be granted with respect to the Grant Deeds.

However, the recordation of the Lis Pendens may not be avoided under 11 U.S.C. § 549. Section 549 only provides for the avoidance of a "transfer" of interest in property of the estate. The recordation of a lis pendens does not result in a transfer of an interest in the property in question. Rather, the recordation gives constructive notice to a prospective buyer of the pendency of a legal proceeding affecting title to or the right of possession of the real property. In re Lane, 980 F.2d 601, 603 (9th Cir. 1992)(citing Cal. Civ. Proc. Code § 409(a)); In re Chenich, 87 B.R. 101, 106 (Bankr. 9th Cir. 1988).

This notice prevents a buyer from claiming bona fide purchaser status with respect to the claim asserted in the legal proceeding if the claim proves valid. Lane, 980 F.2d at 604-05 (citing Cal.

20

Civ. Code § 1214). Thus, the Trustee's motion for summary judgment must be denied to the extent it relates to the Lis Pendens.[17]

### 3. Second Claim for Relief--Avoidance of Grant Deeds Pursuant to 11 U.S.C. § 544(a)(3)

In the second claim for relief in the Cross-Complaint, the Trustee seeks to avoid the transfers effected by the execution (as opposed to the recordation) of the Grant Deeds under 11 U.S.C. § 544(a)(3). Having prevailed on his motion for summary judgment on the first claim for relief as to the Grant Deeds, the Trustee is also entitled to summary judgment on this claim.

Section 544(a)(3) provides that a trustee may avoid a pre-petition transfer by the debtor that would be voidable by a bona fide purchaser of the real property that has perfected its interest in the real property prior to the filing of the bankruptcy petition. 11 U.S.C. § 544(a)(3). This enables a trustee to avoid transfers that could have been avoided under state law by a bona fide purchaser of real property whose interest was perfected prior to the filing of the bankruptcy petition. See In re Tleel, 876 F.2d 769, 772 (9th Cir. 1989).

Under California law, an unrecorded transfer of real property is void as against a bona fide purchaser that has perfected his interest in the real property. Cal. Civ. Code § 1214. As a result

---

[17]However, as discussed below, the recordation of the Lis Pendens violated the automatic stay. As a result, it was void. In re Schwartz, 954 F.2d 569, 573-74 (9th Cir. 1992). The Trustee and/or the current owner of the Warehouse is entitled to have the Lis Pendens expunged. See Cal. Civ. Proc. Code § 405.30.

21

of the avoidance of the recordation of the Grant Deeds, pursuant to the first claim for relief, the transfers represented by the execution of the Post-Petition Grant Deeds are rendered unperfected and thus subject to avoidance under 11 U.S.C. § 544(a)(3).[18]

Again, the Nondebtor Cross-Defendants do not oppose the Trustee's motion for summary judgment on this claim. The Debtor asserts only that he did not act with fraudulent intent. As with the prior claim, the Debtor's bad faith is not an element of the claim, and his good faith is not a defense.

### 6. Fourth Claim for Relief--Avoidance of Deeds of Trust as Fraudulent Transfers Pursuant to Cal. Civ. Code § 3439.05

The Trustee's fourth claim for relief seeks to avoid any transfers of an interest in the Warehouse created by the Deeds of Trust as fraudulent transfers under state law. The Trustee contends that the transfers were made without receiving reasonably equivalent value at a time when the Debtor was insolvent (or rendered the Debtor insolvent). As a result, they were fraudulent under Cal. Civ. Code § 3439.05.[19]

---

[18]Had the Trustee anticipated that the Court would conclude that the Debtor's children obtained a beneficial interest in the Warehouse by virtue of the Irrevocable Trust Agreement, albeit of limited value, he presumably would have sought to avoid that interest pursuant to 11 U.S.C. § 544(a)(3) as well. However, to the Cross-Complaint would need to be amended to assert such a claim before a motion for summary judgment seeking to avoid this transfer could be entertained.

[19]Section 3439.05 of the California Civil Code provides that:
    A transfer made or obligation incurred by a debtor
    is fraudulent as to a creditor whose claim arose
    before the transfer was made or the obligation was

22

Section 544(b) of the Bankruptcy Code permits a trustee to assert a claim to avoid a fraudulent transfer pursuant to state law to the extent there is an actual creditor with an allowable claim against the estate that could have asserted such a claim. See 11 U.S.C. § 544(b). The fourth claim for relief does not allege the existence of such a creditor. Therefore, the motion for summary judgment with respect to this claim must be denied.[20]

### 5. Sixth Claim for Relief--Invalidation of Lis Pendens Pursuant to 11 U.S.C. § 362

The Trustee's sixth claim for relief seeks a declaration that the Lis Pendens is void as a violation of the automatic stay. See 11 U.S.C. § 362(a). Again, the Debtor opposes the motion for summary judgment on this claim on the ground that any stay violation was unintentional. He asserts that he was not represented by counsel at the time he recorded the Lis Pendens and

---

incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

[20]There are other problems with this portion of the motion. First, it seeks a declaration that the Declarations of Trust were testamentary devices. However, the fourth claim for relief contains no allegations relating to the Declarations. Second. It seeks a declaration that the Deeds of Trust were not monetary liens and have no value. This contention requires the production of evidence. No evidence has been supplied.

23

2   was unaware of the prohibition.[21]

3          As noted above, when a bankruptcy case is filed, a stay of
4   various acts against the debtor or property of the bankruptcy
5   estate automatically arises.  Actions taken in violation of the
6   automatic stay are void.  See 40235 Washington St. Corp. v.
7   Lusardi, 329 F.3d 1076, 1080 (9th Cir. 2003); Schwartz, 954 F.2d at
8   573-74.

9          The Ninth Circuit Bankruptcy Appellate Panel has held that the
10  recordation of a lis pendens against property of the estate is a
11  violation of 11 U.S.C. § 362(a)(6)(prohibiting an act to collect,
12  assess, or recover a claim against the debtor).  See In re Edwards,
13  214 B.R. 613, 619 (Bankr. 9th Cir. 1997).  However, Edwards
14  involved the recordation of a lis pendens relating to an action
15  against the debtor.  Section 362(a)(6) would not apply to an action
16  filed and a lis pendens recorded by the debtor.

17         However, the Court concludes that 11 U.S.C. § 362(a)(3) does
18  apply.  This subsection provides that the automatic stay prohibits
19  "any act to...exercise control over property of the estate...."
20  See 11 U.S.C. § 362(a)(3).  It may apply to debtors as well as to
21  creditors.  See In re BNT Terminals, Inc., 125 B.R. 963, 971
22  (Bankr. N.D. Ill. 1990) ("The court will not tolerate unauthorized
23  acts **by debtors** or creditors by allowing possession of, or
24  facilitating the exercise of control over, or permitting the

25  _____

26  [21]This claim is not asserted against the Nondebtor Cross-
    Defendants.

24

dismemberment of property of the estate outside the provisions of the Code." [Emphasis added.])

As noted above, under California law, the recordation of a lis pendens prevents a buyer of the real property from claiming bona fide purchaser status with respect to the asserted claim. Thus, it creates a cloud on title and interferes with a bankruptcy trustee's attempt to sell the real property, perhaps, even reducing the sale price. This qualifies as the exercise of control over the real property. Consequently, because the Court concludes that the recordation of the Lis Pendens violated 11 U.S.C. § 362(a)(3) was therefore void, the Trustee is entitled to summary judgment on the sixth claim for relief.

### CONCLUSION

The Trustee's motion to dismiss or for summary judgment is granted in part and denied in part with respect to the first claim for relief in the Complaint and the fifth claim for relief in the Cross-Complaint. None of the documents attached as exhibits to the Complaint were sufficient to prevent the Warehouse from becoming property of the Debtor's bankruptcy estate, nor were the Deeds of Trust. The Irrevocable Trust Agreement, if bona fide, did effectively transfer to the named beneficiaries an interest in the Warehouse of limited value. However, pursuant to the Irrevocable Trust Agreement, the Debtor retained a substantial beneficial interest in the Warehouse, which became property of his bankruptcy estate.

Case: 05-04345   Doc# 36   Filed: 08/25/06   Entered: 08/28/06 15:37:51   Page 25 of 27

The Trustee's motion to dismiss the second claim for relief in the Complaint is granted in its entirety pursuant to FRCP 12(b)(6).

With respect to the Trustee's motion for summary judgment on the first claim for relief in the Cross-Complaint, the motion is granted with respect to the recordation of the Grant Deeds and denied with respect to the Lis Pendens.

With respect to the second claim for relief in the Cross-Complaint, the Trustee's motion for summary judgment is granted in its entirety.

With respect to the fourth claim for relief in the Cross-Complaint, the Trustee's motion for summary judgment is denied.

With respect to the sixth claim for relief in the Cross-Complaint, the Trustee's motion for summary judgment is granted in its entirety.

Counsel for Trustee is directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

26

COURT SERVICE LIST

Miriam Khatiblou
Goldberg, Stinnett, Meyers, and Davis
44 Montgomery Street, #2900
San Francisco, CA 94104

Marc Voisenat
Law Offices of Marc Voisenat
1330 Broadway, #1035
Oakland, CA 94612

Ralbert Brooks-Hamilton
5552 Fremont Street
Oakland, CA 94608

27